LEONARDO M. RAPADAS
United States Attorney
MARK KONDAS
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
TEL: (671) 472-7332
FAX: (671) 472-7334

Attorneys for the United States of America

**ORIGINAL**

FILED
DISTRICT COURT OF GUAM
JUL 1 8 2003
MARY L. M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| ALFONSO GONZALEZ-CONTRERAS,<br><br>    Petitioner,<br><br>vs.<br><br>JOAQUIN L.G. SALAS, United States Marshal for Guam and the Northern Mariana Islands,<br><br>    Respondent. | CIVIL CASE NO. 03-00025<br><br>**GOVERNMENT'S RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS** |

Pursuant to the Court's Order of July 7, 2003, JOAQUIN L.G. SALAS, the United States Marshal for Guam and the Northern Mariana Islands, (hereinafter Respondent), by and through the United States Attorney for the District of Guam, files this response and respectfully moves this Court to dismiss, or in the alternative, deny the Petition for Writ of Habeas Corpus under Section 2241 of Title 28, United States Code of Petitioner, ALFONSO GONZALEZ-CONTRERAS.

## Memorandum of Points and Authorities

### I. Procedural History

On April 11, 2002, a federal grand jury in the District of Guam returned a superseding indictment against Petitioner and his wife, Leanne Fern Contreras. The indictment charged Petitioner with the offenses: conspiracy to import over 1.5 kilograms of crystal methamphetamine, in violation of 21 U.S.C. §§ 952(a), 960 and 963(Count 1); conspiracy to distribute crystal methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & 846 (Count 2); three counts of importation of crystal methamphetamine, in violation of 21 U.S.C. §§ 952(a) & 960 and 18 U.S.C. § 2 (Counts 3, 5 & 7); three counts of distribution of crystal methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 2 (counts 4, 6 & 8); two counts of use of an interstate facility in aid of racketeering, in violation of 18 U.S.C. §§ 1952(a)(1) & (a)(3) and 2 (counts 9 & 10); and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(3)(A), 1956(h) and 2 (count 15).[1] On May 16, 2003, a jury found the Petitioner guilty of all counts, and he was remanded to the custody of the U.S. Marshal. Petitioner's sentencing is scheduled for August 14, 2003.

On June 6, 2003, the Ninth Circuit decided "that the transport[ation] of drugs through international airspace on a nonstop flight from one United States location to another [did] not constitute importation within the meaning of § 952(a)." United States v. Cabaccang,

---

[1] Leanne Contreras was charged with four counts of use of an interstate facility in aid of racketeering, in violation of 18 U.S.C. §§ 1952(a)(1) & (a)(3) and 2 (counts 11, 12, 13 & 14); and one count of conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(3)(A), 1956(h) and 2 (count 15). She was found guilty of counts 14 and 15.

- 2 -

Case 1:03-cv-00025   Document 3   Filed 07/18/2003   Page 2 of 12

Nos. 98-10159, 98-10195, 98-10203 2003 WL 21297183, at *10 (9th Cir. Guam)(en banc).[2] On June 23, 2003, the Government filed a motion to stay the Ninth Circuit's mandate. On July 3, 2003, the Ninth Circuit granted the Government's motion "pending the filing of the petition for writ of certiorari in the Supreme Court on or before September 4, 2003." See Exhibit 1. Based upon the Cabaccang decision, the Petitioner filed the instant petition on July 3, 2003, and he has claimed to be unlawfully detained because the evidence presented at trial was insufficient to support the importation convictions. (Petition 1 & 3).[3]

## II. Law and Argument

### A. Petitioner has not exhausted his judicial remedies and the instant petition is premature.

The Ninth Circuit requires as a "prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under 28 U.S..C. § 2241." Castro-Cortez v. Immigration and Naturalization Service, 239 F.3d 1037 1047 (9th Cir. 2001). The Petitioner claims that his detention is unlawful by virtue of this court's detention order of May 16, 2003, and he has no other way to bring this issue to the court. (Petition 1 & 3-4). He fails to point out that he can move this Court to revoke or reconsider its previous detention order.

---

[2]The Court overruled its decisions in Guam v. Sugiayama, 846 F.2d 570 (9th Cir. 1988)(per curiam), and United v. Perez, 776 F.2d 797 (9th Cir. 1985) to the extent they addressed "the transport of drugs though international airspace on a nonstop domestic flight. United States v. Cabaccang, Nos. 98-10159, 98-10195, 98-10203 2003 WL 21297183, at *10 (9th Cir. Guam)

[3]"Petition" refers to the Petitioner's petition for Writ of Habeas Corpus under Section 2241of Title 28, United States Code and is followed by a page reference.

- 3 -

Thus, the Court should not entertain the instant petition based upon prudential constraints. Moreover, the petition is premature because the mandate in the Cabaccang case is stayed pending the Government's filing of a petition for writ of certiorari to the Supreme Court.

### B. Petitioner is not entitled to a writ.

28 U.S.C. § 2243 provides in part:

> (a) A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

It is apparent from the instant application that Petitioner is not entitled to a writ because he failed to explain how the Cabaccang decision applies to the other counts of conviction that did not involve importation.

In Cabaccang, Roy, Richard and James Cabaccang were involved in a narcotics ring that recruited various people "to fly from Los Angeles to Guam with packages of methamphetamine concealed in their clothing." Cabaccang, 2003 WL 21297183, at *1. After the drugs were sold, the defendants used couriers and wire transfers to send the drug proceeds back to California. Id at, *1. The defendants were found guilty of conspiracy to import methamphetamine, in violation of 21 U.S.C. §§ 952(a), 960 & 963; conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956. Id., at *1. Richard and Roy were convicted of importation of methamphetamine. Id., at *12. Roy was also convicted of a continuing criminal enterprise count and three counts of attempted importation of methamphetamine. Id., at *12. The Ninth Circuit reversed the importation-related counts of conviction because it found that "the transport of drugs on a

- 4 -

nonstop flight from California to Guam" did not constitute importation. Id., at * 12-13. The Court affirmed the counts of conviction that were not "importation-related." Id., at *12-13.

Like the defendants in the Cabaccang case, the Petitioner was found guilty of other counts that were not related to importation. In fact, the unlawful activity element in the count of conspiracy to commit money laundering and the business enterprise element in the use of an interstate facility counts were based upon drug distribution and not importation. Assuming Cabaccang applied to Petitioner's case, it would only affect those convictions related to importation. As the Ninth Circuit noted in Cabaccang, "[t]oday's decision does nothing more than prevent the government from charging as importation conduct that can only be characterized as the domestic transport of drugs." Id., at *11. Thus, the Petitioner is still lawfully detained because the non related-importation counts are not effected by the Cabaccang decision. Therefore, the Court should dismiss the petition pursuant to Fed. R. Civ. P. 12(b)(6) because the Petitioner has failed to prove a set of facts that would entitle him to relief.

C. **The Cabaccang decision is inapplicable to the Petitioner's case.**

"Congress has defined [the importation drugs] as a continuing [offense]." United States v. Barnard, 490 F.2d 907, 911 (9th Cir. 1973), cert. denied, 416 U.S. 959 (1974). Conspiracy and importation offenses "are not completed until the drugs reach their final destination, and venue is proper in any district along the way." United States v. Turner, 936 F.2d 221, 226 (6th Cir. 1991). Here, the drugs were imported into the United States from Mexico before being

//

//

//

mailed to Guam.[4] The fact that the drugs were transported to Guam on domestic flights is immaterial to the importation-related counts because importation is a continuing offense. In Cabaccang, there was no evidence that the drugs were imported into the United States before they were shipped to Guam, therefore it does not apply to the Petitioner's case. Therefore, the petition should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the Petitioner has failed to state a claim upon which relief can be granted.

## CONCLUSION

Based upon the forgoing facts and law, the United States respectfully moves the Court to dismiss the instant Petition for Writ of Habeas Corpus under Section 2241 of Title 28, United States Code or, in the alternative, to deny it.

Respectfully submitted this 18th day of July 2003.

> LEONARDO M. RAPADAS
> United States Attorney
> Districts of Guam and NMI
>
> By: /s/ Mark E. Kondas
> MARK E. KONDAS
> Assistant U.S. Attorney

---

[4] Pedro Sanchez testified that the methamphetamine came from Mexico. Pedro stated that the Petitioner took him to a house in Tijuana where it was manufactured. During a phone call with Agent Quintanilla, Pedro stated that Poncho was sending the Palometa (cocaine) and the Babies (methamphetamine) from Tijuana. See Page 2 of Government's Exhibit 34.1, which is attached.

- 6 -

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

**JUL 03 2003**

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff-Appellee, v. JAMES CABACCANG, Defendant-Appellant. | No. 98-10159 D.C. No. CR-97-00095-3-JSU |
| UNITED STATES OF AMERICA, Plaintiff-Appellee, v. RICHARD T. CABACCANG, Defendant - Appellant. | No. 98-10195 D.C. No. CR-97-00095-2-JSU |
| UNITED STATES OF AMERICA, Plaintiff-Appellee, v. ROY TOVES CABACCANG, Defendant - Appellant. | No. 98-10203 D.C. No. CR-97-00095-1-JSU ORDER |

EXHIBIT 1

BEFORE: FISHER, Circuit Judge:

Appellee's motion to stay the mandate, filed June 23, 2003, is **GRANTED**. Fed. R. App. P. 41(d)(2).

It is ordered that the mandate is stayed pending the filing of the petition for writ of certiorari in the Supreme Court on or before September 4, 2003.

2

..................CALL PLACED..................

PEDRO: Hello.

GREGORIO: Hello, hello. How come we keep playing ah, hang up the phone.

PEDRO: Ah I don't know.

GREGORIO: What's, is, is. I think it's my phone.

PEDRO: I don't know, (unintelligible) pretty good signal down here.

GREGORIO: I can hear you now very good.

PEDRO: Yeah... My, my your phone, I don't know.

GREGORIO: Yeah, it...same problem ah, it's, it's hard for me to talk to Poncho and ah, in Tijuana. It's ah...very, very unclear.

PEDRO: Yeah.

GREGORIO: Lot of static.

PEDRO: Yeah, I know.

GREGORIO: So, you were saying. Ah ... what's up with the Palometa?

PEDRO: Yeah, he, he tell me um. he, he got, he's, he's going to try to send you seven Palometa's, you know

GREGORIO: Seven?

PEDRO: Yeah, it's a good ones eh..

GREGORIO: Oh yeah, is that ah, you're gonna send it out with the same ah, with the other ah...

PEDRO: No, ah separately.

GREGORIO: Separate?

PEDRO: Ah ha.

GOVERNMENT EXHIBIT 34.1

GREGORIO: Okay.

PEDRO: Okay and ah um...In ah, in, in ah also he, he tell me if ah, if you, your girlfriend can get the money a little early because he got things to do, and he's, he's, he have to go to the south, tomorrow.

GREGORIO: Okay, like ah, what time is early? Lanya to

PEDRO: Ah...I don't know the earliest he, she can?

GREGORIO: Okay, I'll, I'll, I'll do my best to get her to, to do it ah, in the morning.

PEDRO: Okay.

GREGORIO: Okay?

PEDRO: And ah, yeah, and ah he said ah, he's going to send all together tomorrow. The, the Palometas and ah, and ah the other babies.

GREGORIO: How's he. he's, You're going to send it, or he's sending out of ah, where's, where's he sending it from?

PEDRO: Ah, he, he sending it from Tijuana, to, tomorrow.

GREGORIO: Oh he's going to send it up to you?

PEDRO: Yeah.

GREGORIO: Okay, I'm , oh, so, okay so he's getting the Palometa and the , and the babies down in ah, Tijuana to you up there

PEDRO: No he's, he's going to send in tomorrow from, (unintelligible) to here to Long Beach.

GREGORIO: Oh, okay so, you, you have to go back down to Tijuana?

PEDRO: No, no, no. I have, I have to wait, just, eh all I need to do is wait for for the driver.

GREGORIO: Oh okay, okay.

PEDRO: Okay. Do you understand me?

GREGORIO: Yes, so, so he's gon.. so you won't be able to send it till maybe Tuesday?

PEDRO: Ah ha.

GREGORIO: Okay, okay.

PEDRO: Okay?

GREGORIO: Okay.

PEDRO: So, I, I call, I call you first thing in ah...on Tuesday, okay?

GREGORIO: Tuesday?

PEDRO: Yeah.

GREGORIO: No call me tomorrow after ah the, when, when you meet the, with my girlfriend and ah....

PEDRO: Oh okay.

GREGORIO: Then we'll talk and find ah and, we'll discuss, discuss more ah more of the plans.

PEDRO: Okay.

GREGORIO: Okay?

PEDRO: Okay sounds good.

GREGORIO: Okay man, so ah if, if, if you can't get a hold of me on my cell phone, just leave a message and I'll call you back.

PEDRO: Okidoki.

GREGORIO: Okay?

PEDRO: Okay, thank you.

GREGORIO: Okidoki.

PEDRO: Okay.

GREGORIO: Okay.

PEDRO: Ba, bye.

GREGORIO: Bye.

..........................END OF CALL......................